IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR GONZALES, § | | |
| TDCJ-CID # 726044, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-04-0665 | |
| § | | |
| DOUG DRETKE, § | | |
| § | | |
| Respondent. § | | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Arthur Gonzales, an inmate of the Texas prison system, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a state court conviction. The respondent filed a motion for summary judgment. After considering the motion, Gonzales's response, the record, and the applicable law, the court **GRANTS** the respondent's motion and **DISMISSES** the habeas petition. The reasons are stated below.

**I. Factual Background and Procedural History**

The facts of the offense and the trial are set forth in the opinion of the Texas Court of Appeals for the First District affirming Gonzales's conviction and life sentence for capital murder. *Gonzales v. State*, No. 01-95-00795-CR, 2001 WL 1098790 (Tex. App.- Hous. [1st Dist.] Aug 31, 2001, pet. ref'd) (unpublished).

> Appellant [Gonzales] was charged in a two-paragraph indictment with (1) the murder of Gerald Salas, by shooting him with a firearm, during the course of committing and attempting to commit the robbery of Gerald Salas, and (2) the murder of Gerald Salas, by shooting him with a firearm, during the course of committing and attempting to commit the robbery of Darren Burge. The jury charge tracked the

indictment. According to the testimony of Darren Burge, he and Salas were in Burge's apartment in Houston expecting appellant to arrive with a quarter kilo of cocaine that Salas would purchase for approximately $5000 in cash. Burge did not see Salas's money. When appellant arrived, he had a coffee can containing a package of fake dope. Salas opened the can and pulled out a small box wrapped in gray duct tape. He asked appellant, "What is this?"

At that point, appellant pulled a revolver on the two men and demanded their money. Appellant put the revolver to Burge's head and threatened to kill him. Burge had only about $20 in cash which he threw on the floor. Salas did not produce any money. Appellant then threw down some electrical tie straps, told the men to get on their knees, and ordered Burge to tie Salas's hands. Burge was so nervous that he wrapped a strap around each of Salas's hands, but did not tie his hands together. Appellant hit Burge on the head with the weapon, and when Burge fell down, Salas stood up and began to struggle with appellant. Burge saw the two men in a bear hug, the gun pointed at Salas's back, then he heard a gunshot. Burge ran out the front door of the apartment and immediately heard a second shot. Burge ran all the way around the apartment complex twice before returning to his apartment. He found Salas's body in the apartment doorway, the front pockets of his jeans turned inside out. From about 100 feet away near the swimming pool, appellant, still holding the gun, was calling out, "Darren, I'm going to get you." Burge ran to the home of his girlfriend, Lori DeJohn, and phoned Salas's girlfriend, Fawn Love Ward.

The police crime scene unit investigator photographed Salas's body in the doorway of Burge's apartment. The front pockets of his jeans were turned inside out. This fact is also shown in scene photographs. The officer found, among other things, a billfold that appeared to have been rifled through, the coffee can, and the duct-tape-wrapped box. An investigator for the medical examiner's office testified that there were two $20 bills and one one-dollar bill in Salas's shirt pocket. The assistant medical examiner who performed the autopsy on Salas testified that there were two gunshot wounds of entrance on the back and one exit wound on the back.

Burge contacted Robert Cartright, a D.E.A. investigator he knew, and told him about the crime. Cartright contacted and met with Houston police Sgt. H.L. Mayer. Then they met with Burge, whom Sgt. Mayer described as "terrified," "crying," and "scared to death." Burge gave the officers a written statement.

Dustin Burge, Darren's brother, testified that appellant left a message on his telephone answering machine that he wanted Darren to get in touch with him and that he wanted Darren to be quiet. Dustin gave the tape to the police, and it was admitted into evidence and played for the jury.

Darren Burge contacted Sgt. Mayer and told him about appellant's phone call to his brother. Darren Burge paged appellant and, with the assistance of the police, the

conversation between Burge and appellant was recorded. The cassette tape recording of that conversation was admitted into evidence and played for the jury.

Fawn Love Ward was an exotic dancer living with Salas at the time of his death. She testified that Darren Burge and Salas were friends. She did not believe that Salas was dealing cocaine. She also testified that when Salas left home on the evening he was killed, he had a lot of cash in the right front pocket of his jeans. She further stated that Burge phoned her that evening and said appellant had shot Salas.
Darren Burge's girlfriend, Lori DeJohn, testified that appellant, Burge, and Salas were dealing drugs together. At about the time of this offense, she had concluded from conversations she overheard that it had been arranged for Salas to buy cocaine from appellant. After the killing, appellant phoned DeJohn and said she needed to tell Burge to call him, and that Burge needed "to keep his mouth shut." Appellant also advised DeJohn that she could "take the Fifth."

Four days after the murder, appellant was arrested by a D.P.S. trooper who stopped him for running a red light. Appellant had approximately $2000 in cash at that time.

After the State rested its case, the defense recalled Sgt. Mayer for further questioning. The defense also called appellant's brother, Carlos Gonzales, who testified that he learned of the crime through a friend who had a telephone conversation with Darren Burge. Carlos Gonzales testified that when he told appellant the substance of that conversation, appellant was "in shock" and said that Darren was lying.

The prosecutor argued to the jury that appellant went to Burge's apartment with a package of fake dope because he intended to commit a robbery. The prosecutor also argued that, according to Ward, Salas had a lot of money with him that day; however, after he was shot, Salas's pockets were turned inside out and the only money on his body was the $42 found in his shirt at the morgue. The prosecutor did not argue that the money appellant had when he was arrested was, or even may have been, Salas's.

The prosecutor further argued that the jurors could convict appellant of capital murder if they believed beyond a reasonable doubt that he robbed, or was attempting to rob, either Salas or Burge. The prosecutor reminded the jurors of Burge's testimony that appellant robbed him of about $20 that he threw onto the floor when appellant put the gun to his head and demanded money, and that Burge's money was not in the apartment when police arrived.

*Gonzales*, 2001 WL 1098790, at \*\* 4-5.

Gonzales was convicted and sentenced on July 12, 1994. *State v. Gonzales*, No. 9414679 (208th Dist. Ct., Harris County, Tex.). The First Court of Appeals affirmed Gonzales's conviction on August 31, 2001, and the Texas Court of Criminal Appeals refused his petition for discretionary review on March 6, 2002.

Gonzales filed state application for a writ of habeas corpus which the Court of Criminal Appeals dismissed because the direct appeal was still pending. *Ex parte Gonzales*, No. 41,024-01, at cover (Tex. Crim. App. May 5, 1999); *see also* Texas Court of Criminal Appeals Website, (http://www.cca.courts.state.tx.us/). Gonzales filed an application for a writ of mandamus which the Court of Criminal Appeals denied without a written order. *Ex parte Gonzales*, No. 41,024-02 (Tex. Crim. App. Oct. 6, 1999), *Id*. Gonzales then filed a federal petition for a writ of habeas corpus which was dismissed without prejudice. *Gonzales v. Johnson*, No. H-00-232 (S.D. Tex. Sept. 13, 2000).

Gonzales filed a second state application for a writ of habeas corpus in the 208th District Court of Harris County, Texas, on March 27, 2003. *Ex parte Gonzales*, No. 41,024-03 at 2. The application was forwarded to the Court of Criminal Appeals which denied it without a written order on December 17, 2003. *Id*. at cover. Gonzales then filed the current pending federal habeas action with this court.

## II. Claims for Relief

Gonzales contends that he was denied effective assistance of counsel and in support alleges that his attorney failed to do the following:

   1.   Object to lack of an accomplice witness instruction or make a request for such an instruction;

    2.        Object to the introduction of prior, extraneous offenses which were inadmissable and elicited such testimony from the State's main witness;

    3.        Request a limiting instruction regarding the credibility of the State's main witness who had been previously convicted of a felony narcotics charge; and

    4.        Object to an improper argument by the State.

Petition, Docket Entry No. 1, at 7-8, Memorandum, Docket Entry No. 2, at 5-21.

### III. The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 120 S.Ct. 1495, 1519 (2000)*, citing* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 123 S.Ct. 362, 365 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle

to a new context where it should apply. *Williams,* 120 S.Ct. at 1520, 1523. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 1521

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 123 S.Ct. at 1036.

These standards will be applied to the pending summary judgment motion.

## IV. Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 2064. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 2068. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. *Id.*

    A.    <u>Accomplice Witness Instruction</u>

Gonzales contends that Darren Burge was an accomplice on the basis that he participated in the events which resulted in Salas's death and could have been charged with the same or a lesser offense as that for which Gonzales was tried. *See* Memorandum, Docket Entry No. 2, at 5. Gonzales points out that the ill fated drug transaction took place at Burge's apartment and that Burge took an active part in the transaction. Gonzales further points to evidence which implicated Burge

as an accomplice: blood on Burge's person, Burge's admission to physical contact with Salas, and Burge's bloody fingerprints on the phone in the apartment. *Id.* at 7. Gonzales claims that the prosecution and the defense attorney tried the case under the impression that Burge was indeed an accomplice. Gonzales notes that his counsel made reference to Burge's accomplice status at least six times and argued that his testimony required corroboration. *Id. citing* TEX. CODE CRIM. PRO. art. 38.14 (Vernon's 2002) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

The Court of Criminal Appeals rejected the argument that Gonzales's attorney was ineffective for failing to object to the omission of the accomplice instruction and to request such an instruction. In his affidavit, Gonzales's attorney stated that their defensive strategy was that Burge was the shooter and that he intended to frame Gonzales by testifying for the State. *Ex parte Gonzales*, No. 41,024-03, at 55.

Gonzales contends that Burge was an accomplice due to the fact that he was the only other person present at the shooting besides Gonzales and Salas and because he was involved in the drug deal. Docket Entry No. 2, at 7. Under Texas law, "[a] person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense." *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999). A person's mere presence at a crime does not make him an accomplice, even if he knows about the crime and does not disclose it. *Id.*

Despite Gonzales's arguments, the evidence does not show that Burge participated in the murder. On the contrary, the trial record indicates that Burge was an intended victim, along with

8

Salas, and that he had been truly frightened by the experience. *See* Statement of Facts (SOF), Vol. IV, at 61, 128-136. The state habeas court found that Gonzales failed to prove that his counsel was ineffective because there was no basis for an accomplice instruction. *Ex parte Gonzales*, No. 41,024-03, at 63. Gonzales has failed to show that the state courts' determination of the claim was contrary to or an unreasonable application of constitutional law as established by the Supreme Court or that it was an unreasonable determination of the facts based on the state court records. Therefore, the claim will be **DENIED**.

      B.     Prior Offenses

Gonzales contends that his counsel was ineffective for failing to object to the introduction of offense evidence regarding prior drug transactions which were unrelated to Salas's death. Docket Entry No. 2, at 16. He further complains that his attorney failed to request a limiting instruction regarding such offenses and opened the door by eliciting similar information. *Id*. In addition, Gonzales contends that his counsel failed to request a jury charge instructing the jury that it must find beyond a reasonable doubt that the prior offenses had been committed before considering them during their deliberations. *Id*. at 17.

Gonzales's attorney explained in his affidavit, made in response to Gonzales's state habeas application, that allowing testimony regarding prior drug transactions was based on a defensive strategy of showing that Burge and Gonzales knew each other from such transactions and that this gave Burge an opportunity to frame Gonzales. *Ex parte Gonzales*, No. 41,024-03, at 56. The trial court found the counsel's statement to be credible and concluded that his decision was based on a reasonable trial strategy based on a defensive theory. *Id*. at 61. The Court of Criminal Appeals denied the application based on the trial court's findings. *Id*. at cover.

9

The courts must review a trial counsel's performance from his perspective at the time of the trial, not from the advantage of hindsight. *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir.1995). Moreover, strategic decisions at trial are afforded great deference. *Id*. at 72 ("A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with an obvious unfairness.") *See also*, *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004). Gonzales has failed to rebut the state courts' findings concerning his attorney's decision regarding prior drug deals. Consequently, this claim should be **DENIED**. *See Ramirez v. Dretke*, 398 F.3d 691, 698 (5th Cir. 2005).

      C.      <u>Instruction Regarding the Credibility of the State's Main Witness - Darren Burge</u>

Gonzales reiterates that Burge was the only eyewitness to the shooting and he contends that his counsel was ineffective for failing to request that the trial court instruct the jury that Burge's credibility had been impeached by a prior felony conviction for narcotics. Docket Entry No. 2, at 18-19. Gonzales asserts that his counsel knew of the prior conviction and had a duty to request such an instruction in order to effectively limit Burge's credibility with the jury. *Id*.

A Texas trial court is not required to give a limiting instruction where the defense has impeached a State's witness. *Nethery v. State*, 692 S.W.2d 686, 705 (Tex. Crim. App. 1985). Gonzales's attorney was not deficient in failing to make a futile request or objection. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ."); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984)

("Counsel is not required to engage in the filing of futile motions."). Gonzales's claim regarding the alleged failure to seek an impeachment instruction will be **DENIED**.

    D.    State's Closing Argument

Gonzales contends that his counsel was ineffective for failing to object to the prosecution's expression of her personal opinions during her closing argument. Docket Entry No. 2, at 20. Gonzales cites three statements by the prosecutor:

1. ". . . I like Darren Burge, and I believe that Darren Burge told you the truth." V SOF at 40.

2. "He could have said whatever he wanted to say, because nobody else was there. But, that's not what he did. He told you exactly what he saw. That was not a man who was embellishing on story. You saw him. If there was anybody telling the truth, it was that man." V SOF at 43.

3. "Hub Mayer is one of the most experienced homicide guys in Houston. He's been with HPD for years. He's won awards. And, if he tells you that witness was the scardest [sic] person he's ever seen in a homicide investigation, I promise you, that is saying a lot." V SOF at 41.

Gonzales's trial counsel answered the allegation in his court ordered affidavit. *Ex parte Gonzales*, No. 41,024-03, at 56. The counsel explained that while he found that the prosecutor's personal opinions were objectionable, he thought that making an objection would emphasize the effect and that the trial court could not have given an instruction which would have been truly helpful. *Id*. The district court considering the habeas claims found that counsel's failure to object was based on reasonable trial strategy because he did not want to draw the jury's attention to the argument or emphasize its effect. *Id*. at 62. A counsel's decision to abstain from raising objections to avoid drawing additional attention to an argument or evidence is considered reasonable strategy. *See Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003). Gonzales has failed to demonstrate that his counsel's performance was deficient or prejudicial and the state courts'

11

determination of the ineffective assistance of counsel claim was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court. Nor was the decision an unreasonable determination of the facts. The claim shall be **DENIED** and this action shall be **DISMISSED**.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253, Gonzales needs to obtain a Certificate of Appealability before he can appeal this Memorandum Opinion and Order dismissing his petition. To obtain a Certificate of Appealability, Gonzales must make a substantial showing of the denial of a constitutional right. *Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing, Gonzales must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum Opinion and Order, Gonzales has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). The Court **DENIES** the issuance of a Certificate of Appealability in this action.

## V. Conclusion

The court **ORDERS** the following:

1..  The respondent's Motions for Extension of Time (Docket Entry Nos. 7 and 8) are **GRANTED**.

2.  The petitioner's Motion for Extension of Time to Respond (Docket Entry No. 11) is **GRANTED**.

3.  The respondent's Motion for Summary Judgment, (Docket Entry No. 9) is **GRANTED**.

4.  This action is **DISMISSED** with prejudice.

5.  A Certificate of Appealability is **DENIED**.

**SIGNED** on this 9th day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE